UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER BLOCK, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br>v.<br><br>HZ OPS HOLDINGS, INC.; HZ PROPS RE, LTD.; and DOES 1 to 10,<br><br>                         Defendants. | CLASS ACTION<br><br>Case No. 1:19-CV-06461<br><br>Hon. Charles R. Norgle |

**FIRST AMENDED NATIONWIDE CLASS ACTION COMPLAINT**

Plaintiff Christopher Block ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on his personal knowledge:

**INTRODUCTION**

1. Plaintiff has a mobility disability stemming from a C5 neck fracture causing quadriplegia, which has caused him to use a wheelchair for mobility.

2. Defendants HZ OPS HOLDINGS, INC., HZ PROPS RE, LTD., (collectively, "HZ OPS") and DOES 1 to 10, (collectively, "Defendants"), own and operate more than one hundred forty-two (142) units of Popeyes Louisiana Chicken ("Popeyes") restaurants in the state of Illinois, and the states of Arkansas, Arizona, Colorado, Iowa, Indiana, Kentucky, Missouri, Nevada, Ohio, Texas, and Utah. The Popeyes locations Defendants own and operate include those locations which Plaintiff encountered, as described in more detail below.

3. Defendants discriminated against Plaintiff – and others similarly situated mobility impaired persons - by utilizing unreasonable policies and discriminatory policies, practices, or procedures that consistently violate the Americans with Disabilities Act's ("ADA") accessibility

1

guidelines and routinely result in access barriers at Defendants' facilities. Specifically, Plaintiff experienced difficulty and risk of harm navigating the parking lot and path of access to Defendants' business due to excessive sloping, all in violation of the ADA, and that those violations exist due to Defendants' inadequate, existing policies, practices, or procedures that leads to, as in the case of Defendants' parking lots, a systemic failure to maintain accessibility features within the purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Areas") of its facilities.

4. In fact, numerous facilities owned, controlled, and/or operated by Defendants ("Defendants' facilities") have Parking Areas that are, or have become inaccessible to individuals who rely on wheelchairs for mobility, demonstrating that the centralized decision making Defendants employ with regard to the alteration, maintenance, and operation of its facilities causes access barriers and/or allows them to develop and persist at Defendants' facilities.

5. Plaintiff brings this action individually and on behalf of all others similarly situated to compel Defendants to cease unlawful discriminatory practices and to reasonably modify its existing policies, practices, or procedures to ensure its facilities are maintained in compliance with the ADA's parking and lane of access regulations. Doing so will ensure Plaintiff's full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services. Plaintiff seeks declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations.

6. Unless Defendants are required to remove the access barriers described below, and required to make reasonable modifications to its existing policies, practices, or procedures so that access barriers do not reoccur at Defendants' facilities, Plaintiff and the proposed Class will

continue to be denied full and equal access to those facilities as described and will be deterred from fully using Defendants' facilities so long as Defendants' unlawful discriminatory practices continue.

7. Defendants' discrimination sends a message that it is acceptable for public accommodations to utilize unreasonable and discriminatory policies, practices, or procedures that deprive mobility impaired individuals of the opportunity to full and equal enjoyment of, and a meaningful opportunity to participate in and benefit from Defendants' services.

8. The ADA expressly contemplates injunctive relief aimed at modification of existing policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> [i]n the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities … Where appropriate, injunctive relief shall also include requiring the … modification of a policy…

42 U.S.C. § 12188(a)(2).

9. Pursuant to the ADA it is mandatory that Defendants make reasonable modifications in its existing policies, practices, or procedures to afford its goods, services, facilities, privileges, advantages, or its accommodations to individuals with disabilities, and it is unlawful discrimination for Defendants' to fail to make such modifications. 42 U.S.C. 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

10. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants remediate all access barriers within the Parking Areas at Defendants' facilities, consistent with the ADA;

   b. Defendants modify their existing policies, practices, or procedures so that access barriers within the Parking Areas at Defendants' facilities do not reoccur; and

    c.    Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 10.a. and 10.b. has been implemented and will remain in place.

11.    Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

12.    Plaintiff is a current resident of Highland Park, and previously was, a resident of Lake Forest, Illinois. As described above, as a result of his disability, Plaintiff uses a wheelchair for mobility. Plaintiff suffered an injury three years ago which resulted in a fracture to his fifth vertebrae, leaving him paralyzed from the chest down. Despite these significant injuries, Plaintiff is an active equestrian and rower. He has recently returned from a scuba diving trip where he learned how to scuba dive with assistance. Prior to his injury, Plaintiff earned a bachelor's degree in mechanical engineering from Virginia Tech University and a master's degree in biological and systems engineering also from Virginia Tech. Plaintiff worked for various companies as a test engineer until the time of his injury. Since that time, he has persevered through multiple surgeries to regain his strength and use of his arms. Plaintiff looks forward to returning to the workforce in the coming months.

13. Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq.

14. Defendant HZ OPS HOLDINGS, INC. is, and at all relevant times was a Delaware Corporation qualified to, and doing business in the State of Illinois. Plaintiff is further informed and believes, and based thereon alleges that Defendant HZ OPS HOLDINGS, INC. is a developer of Popeyes restaurant, and owns, leases, and/or operates the Popeyes doing business in the state of Illinois (32 Popeyes locations as of 12/31/18), including in the Northern District of Illinois, and in Arkansas (6 Popeyes locations as of 12/31/18), Arizona (28 Popeyes locations as of 12/31/18), Colorado (30 Popeyes locations as of 12/31/18), Iowa (1 Popeyes location as of 12/31/18), Indiana (2 Popeyes locations as of 12/31/18), Kentucky (1 Popeyes location as of 12/31/18), Missouri (20 Popeyes locations as of 12/31/18), Nevada (3 Popeyes locations as of 12/31/18), Ohio (8 Popeyes locations as of 12/31/18), Texas (1 Popeyes location as of 12/31/18), and Utah (10 Popeyes locations as of 12/31/18) as described herein.

15. Defendant HZ PROPS RE, LTD. is, and at all relevant times was a Texas limited partnership qualified to, and doing business in the State of Illinois. Plaintiff is further informed and believes, and based thereon alleges that Defendant HZ PROPS RE, LTD. owns, leases, and/or operates the Popeyes doing business in the state of Illinois, including in the Northern District of Illinois, and in Arkansas, Arizona, Colorado, Iowa, Indiana, Kentucky, Missouri, Nevada, Ohio, Texas, and Utah, as described herein.

16. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and are therefore subject to the requirements of the ADA.

17. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiff at this

5

time. Plaintiff will amend this Complaint to assert their true names and capacities when known. Plaintiff is informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

18. Plaintiff asserts that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint were the alter egos, agents and/or employees and/or employers of their Co-Defendants and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL ASSERTIONS

**Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities.**

19. Plaintiff has visited Defendants' facilities located at 3204 South Ashland Ave, Chicago, IL, including within the last year, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in a purportedly accessible parking area and other ADA accessibility violations as set forth in more detail below.

20. Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities, at least three times a year. It is conveniently located for him, and Plaintiff regularly dines at Popeyes when he is returning from his rehabilitation sessions. He likes to order the grilled or fried chicken sandwich and/or a salad. Furthermore, he intends to return to Defendants' facilities to ascertain whether those facilities remain in violation of the ADA.

21. As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded. Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the

discrimination on the basis of disability he has previously encountered there. Defendants' discriminatory conduct will continue so long as its facilities remain non-compliant with the ADA's parking and lane of access regulations, and that those violations presently exist due to Defendants' inadequate policies, practices, or procedures that have led, and in the future will lead to a systemic failure to maintain ADA required accessibility features at Defendants' facilities.

22. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendants' facilities, and will continued to experience unlawful discrimination on the basis of disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendants' facilities, in violation of his civil rights under the ADA.

23. As an individual with a mobility disability who uses a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' facilities, have adequate, reasonable, and non-discriminatory policies, practices, or procedures that will lead to both the maintenance ADA required accessibility features at Defendants' facilities, and remediation of architectural barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

### Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.

24. As the owner and manager of their properties, Defendants employ centralized policies, practices, or procedures with regard to the alteration, maintenance, and operation of its facilities.

25. As a Popeyes' franchisee, Defendants utilize Brand Standards and Procedures, Brand Training Standards, and such other operating standards specifications, and technique manuals issued by the franchisor, and is required to follow all of those manuals' instructions,

7

requirements, standards, specifications, and procedures at each of its one hundred two (142) locations, including those setting forth management, administration, and maintenance policies, practices, or procedures related to "Parking Lot and Curbs" and "Sidewalks."

26. Additionally, as a Popeyes' franchisees and/or developers, Defendants are required to maintain their locations via a "facilities management program," and standard operating procedures, created and internally maintained by the Defendants. Moreover, due to the high number of locations, Defendants utilize Multi-Unit District Manager to manage groups of six to seven restaurants, whose responsibilities include ensuring that Defendants' company-wide policies, practices, and procedures are followed, including adherence to management, administration, and maintenance polices related to "Parking Lot and Curbs" and "Sidewalks," and to Defendants "facilities management program."

27. Moreover, Defendants employ Multi-Unit District Managers to manage six to seven individual restaurants within their system, whose responsibilities include ensuring that Defendants' company policies and procedures are followed, and that the restaurants are in compliance with all State and Federal laws.

28. To date, Defendants' centralized alteration, maintenance, and operational policies, practices, or procedures have systematically and routinely violated the ADA by failing to maintain and operate facilities so that the accessible features of Defendants' facilities are maintained, and/or by failing to remove architectural barriers.

29. On Plaintiff's behalf, investigators examined multiple locations owned, controlled, and/or operated by Defendants and found the following violations, which are illustrative of the fact that Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in accessibility violations:

   a.   9001 South Harlem Ave, Bridgeview, IL (Popeyes Restaurant #2387)

      i.   The surfaces of one or more purportedly accessible access aisles had a run slope of 9.3% in space.

   b.   3204 S. Ashland Ave, Chicago, IL (Popeyes Restaurant #2365)

      i.   The surfaces of one or more purportedly accessible access aisles had a run slope of 3.7% and 11.1% and a cross slope of 4.9%.

   c.   10601 Springfield Pike, Cincinnati, OH (Popeyes Restaurant #10563)

      i.   The surfaces of one or more purportedly accessible access aisles had a run slope of 4.5% in space and 6.7% on protruding curb ramp into aisle immediately in the front of the door.

   d.   452 W. Ridge Road, Griffith Park, IN (Popeyes Restaurant #2256)

      i.   The surfaces of one or more purportedly accessible access aisles had a run slope of 17.2% on corner curb ramp.

   e.   1165 Kemper Meadow Dr., Cincinnati, OH (Popeyes Restaurant #8584)

      i.   The surfaces of one or more purportedly accessible access aisles had a run slope of 9.5%.

   f.   5102 Dixie Hwy, Fairfield, OH (Popeyes Restaurant #10607)

      i.   The property had no designated accessible parking.

30.   The fact that individuals with mobility-related disabilities are denied full and equal access to Defendants' numerous locations, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendants' systemic disregard for the civil rights of individuals with disabilities.

31.   Defendants' systemic access violations demonstrate that Defendants either employ policies, practices, or procedures that fail to alter its facilities so that they are readily accessible

9

and usable, and/or that Defendants employ policies, practices, or procedures that are unable to maintain accessibility.

32. As evidenced by the widespread inaccessibility of Defendants' parking facilities, absent a change in Defendants' existing policies, practices, or procedures, access barriers are likely to reoccur in Defendants' facilities even after they have been remediated.

33. As a result of Defendants' non-compliance with the ADA Plaintiff has been denied the benefit of, and participation in the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, or accommodations, and has been treated unequally by Defendants.

34. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify its existing policies, practices, or procedures that have created or allowed, and will create or allow, inaccessibility to affect Defendants' network of facilities.

## JURISDICTION AND VENUE

35. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

36. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

37. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

38. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of themselves and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any HZ Ops Holdings, Inc./HZ Props RE, Ltd. location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of its facilities.

39. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

40. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

41. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

42. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

43. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

### SUBSTANTIVE VIOLATION
### VIOLATION OF THE ADA, TITLE III
### [42 U.S.C. §§ 12101 *et seq.*]
### (Against all Defendants)

44. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

45. At all times relevant to this action, Title III of the ADA was in full force and effect and applied to Defendants' conduct.

46. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

47. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individuals with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

48. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

49. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations," 42 U.S.C. § 12182(a), and prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), and from denying individuals with disabilities

the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. §§ 36.202.

50. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

51. Title III further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

52. Title III and its implementing regulations define discrimination to include the following:

a) Failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv);

b) For alterations to public accommodations made after January 26, 1992, failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2);

c) Failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211; and,

d) Failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to avoid such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R.§ 36.302(a).

53. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable

13

grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

54. The ADA also provides for specific injunctive relief, which includes the following:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include . . . modification of a policy . . . to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2); 28 C.F.R. § 36.501(b).

55. Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

56. The ADA requires Defendants' facilities to be altered, designed, and constructed so that they are readily accessible to and usable by individuals who use wheelchairs. 42 U.S.C. § 12183(a).

57. Further, the ADA requires the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities. 28 C.F.R. § 36.211.

58. The architectural barriers described above demonstrate that Defendants' facilities were not altered in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs in the first instance, and/or that Defendants' facilities were not maintained or operated so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

59. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

60. Defendants' repeated and systemic failures to alter its facilities so that they are readily accessible and usable, to remove architectural barriers, and to maintain the accessible features of their facilities constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

61. Defendants' facilities are required to comply with the Department of Justice's 2010 Standards for Accessible Design, or in some cases the 1991 Standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406; 28 C.F.R., pt. 36, app. A.

62. Defendants are required to provide individuals who use wheelchairs full and equal enjoyment of their facilities. 42 U.S.C. § 12182(a).

63. Defendants have failed, and continue to fail, to provide individuals who use wheelchairs with full and equal enjoyment of their facilities.

64. Defendants have discriminated against Plaintiff and the class in that they have failed to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs in violation of 42 U.S.C. § 12182(a) as described above.

65. Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

66. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

67. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its policies, practices, or procedures to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Respectfully submitted,

Dated: December 10, 2019

By: s/ Adam C. York
One of Plaintiff's Attorneys

Michael Aschenbrener (6292306)
masch@kamberlaw.com
Adam C. York (6294143)
ayork@kamberlaw.com
**KamberLaw LLC**
220 N Green St
Chicago, IL 60607
Tel: 212.920.3072
Fax: 212.202.6364
*[Additional counsel listed below.]*

16

Benjamin J. Sweet*
**THE SWEET LAW FIRM, PC**
186 Mohawk Drive
Pittsburgh, Pennsylvania 15228
Phone: 412-742-0631
ben@sweetlawpc.com

Jonathan D. Miller*
Jordan Porter*
**NYE, STIRLING, HALE & MILLER, LLP**
33 West Mission, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jonathan@nshmlaw.com
jordan@nshmlaw.com

*Counsel for Plaintiff Christopher Block and the Class*

*Admission *pro hac vice* anticipated.